UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| GREGORY ROGERS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:21-cv-00023-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CITY OF FRANKFORT, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

This matter is before the Court on the City of Frankfort's Motion for Summary Judgment. Plaintiff Gregory Rogers brings this action under Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, alleging that Frankfort failed to hire him out of retaliation for a letter that Mr. Rogers wrote to the City's Mayor. The briefing period has concluded, and the matter is ripe for review. For the reasons that follow, the City of Frankfort's motion will be **DENIED**.

# I

For more than twenty years, Plaintiff Gregory Rogers served the City of Frankfort, Kentucky. [R. 1; R. 1-1.] At the time he retired in June 2018, Mr. Rogers was the Superintendent of Public Transportation for the City.[1] A few months later, in November 2018, the City of Frankfort was actively seeking a Seasonal Transit Driver. [R. 1 at 2; R. 47-1 at 2.] Mr. Rogers applied for that position. [R. 1 at 4.]

---

[1] Mr. Rogers's Complaint states that he retired from his position as Superintendent in June 2017. [*See* R. 1 at 2.] Numerous pieces of evidence suggest, however, that Mr. Rogers actually retired in June 2018. [*See* R. 47-3 at 9-13.] This fact is immaterial, but the Court notes the discrepancy here for clarity's sake.

While Mr. Rogers's application for the Seasonal Transit Driver position was pending, he sent a letter to the Mayor of the City of Frankfort. *Id*. Mr. Rogers's letter expressed his concerns about the City's hiring practices, and what he believed to be an inappropriate relationship between Tom Bradley, the Public Works Director, and Jennifer Hall, the former Public Works Secretary and Mr. Rogers's successor as the Superintendent of Public Transportation. *Id*.; [R. 1-1.] As Mr. Rogers's successor in the role of Superintendent, Ms. Hall oversaw the hiring for the Seasonal Transit Driver position. [R. 1 at 4; R. 47-1 at 3.] On December 17, 2018, Mr. Rogers received a letter notifying him that he was not selected for the Seasonal Transit Driver position. [R. 1-4.]

On February 5, 2019, Mr. Rogers filed a charge of discrimination based on retaliation with the Kentucky Commission on Human Rights and the Equal Employment Opportunity Commission ("EEOC"). [R. 1-5.] After receiving a "right to sue" letter from the EEOC informing him that the EEOC would not proceed with any further investigation into his matter [R. 1-6], Mr. Rogers filed this action against the City of Frankfort. [R. 1.] Based on the factual allegations described above, Mr. Rogers claims one count of retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act. [R. 1 at 5-7.] Following a period of discovery, the City of Frankfort moved for summary judgment on Mr. Rogers's retaliation claim. [R. 47.] The Court turns now to the pending motion.

## II

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger*

*v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986)). Stated another way, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc*., 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc*., 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson*, 477 U.S. at 255). The Court is under no duty, however, to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

3

**A**

Mr. Rogers alleges that the City of Frankfort violated his rights under Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act, which, among other things, prohibits employers from retaliating against employees who oppose discriminatory practices in the workplace. *See* Ky. Rev. Stat. Ann. § 344.280(1). Retaliation claims brought under the Kentucky Civil Rights Act are analyzed under the same framework used to analyze similar federal claims. *See Montell v. Diversified Clinical Servs*., 757 F.3d 497, 504 (6th Cir. 2014) (citing *Hamilton v. GE*, 556 F. 3d 428, 435 (6th Cir. 2009) ("Retaliation claims under the KCRA are evaluated under the same standard as we use to evaluate federal Title VII claims."); *See also Brooks v. Lexington-Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 790, 801-02 (Ky. 2004).

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)). In other words, "Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII." *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014).

In the Sixth Circuit, Title VII retaliation claims based on a failure-to-hire are analyzed using the framework applicable to any other Title VII retaliation claim, not by employing the framework applicable to a stand-alone failure-to-hire claim. *Hood v. City of Memphis Pub.*

*Works Div.*, No. 2:17-cv-02869-SHM, 2021 U.S. Dist. LEXIS 44920 at *18-19 (W.D. Tenn.

March 10, 2021) (citing *Lyons v. Metro. Gov't of Nashville & Davidson Cty.*, 416 F. App'x 483,

489 (6th Cir. 2011)).  Where a plaintiff seeks to prove a claim of retaliation, a burden shifting

framework applies.  First, the plaintiff must establish a prima facie case of retaliation by

showing:

> (1) that she engaged in activity protected by Title VII; (2) this exercise of
> protected rights was known to the defendant; (3) defendant thereafter took
> adverse employment action against the plaintiff, or the plaintiff was subjected
> to severe or pervasive harassment by a supervisor; and (4) there was a causal
> connection between the protected activity and the adverse employment action
> or harassment.

*Morris v. Oldham Cty. Fiscal Court*, 201 F. 3d 784, 792 (6th Cir. 2000) (citations omitted).

Once a plaintiff makes out a prima facie case, the burden then shifts to the defendant

employer to "'articulate some legitimate, nondiscriminatory reason' for its actions." *Id*. (quoting

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Once the defendant employer

articulates a nondiscriminatory reason for its action, the burden shifts back to the plaintiff, who

"then must demonstrate 'that the proffered reason was not the true reason for the employment

decision.'"  *Id*. (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

While the burden of production shifts throughout the analysis, the burden of persuasion remains

with the plaintiff.  *Id*.

## B

The first issue to consider is whether Mr. Rogers engaged in an activity protected by Title

VII.  As stated above, Title VII's opposition clause makes it "unlawful . . . for an employer to

discriminate against any of his employees . . . because he has opposed any practice made . . .

unlawful . . . by this [title.]"  42 U.S.C. § 2000e-3(a).  "The Supreme Court has held that the term

'oppose' should be interpreted based on its ordinary meaning: '[t]o resist or antagonize . . . ; to

contend against; to confront; resist; withstand.'" *Jackson v. Genesee County Rd. Comm'n*, 999

F.3d 333, 344 (6th Cir. 2021) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*,

555 U.S. 271, 276 (2009)).  The Sixth Circuit has recognized opposition activity protected by

Title VII to include "complaining to anyone (management, unions, other employees, or

newspapers) about allegedly unlawful practices; [and] refusing to obey an order because the

worker thinks it is unlawful under Title VII." *Id.* at 344-45 (internal quotations and citations

omitted).

Limited restrictions exist, however, on what constitutes opposition activity.  *Id.* at 345.

"While the plaintiff's allegations of protected activity do not need to 'be lodged with absolute

formality, clarity, or precision,' the plaintiff must allege more than a 'vague charge of

discrimination.'" *Id.* (quoting *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645

(6th Cir. 2015)).  Additionally, the plaintiff must have a "reasonable and good faith belief that

the opposed practices were unlawful." *Id.* (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d

561, 579 (6th Cir. 2000)).

Here, Frankfort argues that Mr. Rogers did not engage in protected activity when he

wrote a letter to Frankfort's Mayor expressing concerns about an inappropriate relationship

taking place between Tom Bradley and Jennifer Hall.  [R. 47-1.]  According to Frankfort, Mr.

Rogers's deposition testimony makes clear that "he never observed anything he would

characterize as sexual harassment and he did not believe he was reporting sexual harassment."

*Id.* at 12.  Frankfort asserts that Mr. Rogers couches his beliefs regarding any inappropriate

relationship between Mr. Bradley and Ms. Hall on rumors. *Id.* at 12-13.  Moreover, argues

Frankfort, it appears that the relationship between Bradley and Hall was consensual, which

means that Mr. Rogers could not have reasonably believed he was reporting anything prohibited

by Title VII or the Kentucky Civil Rights Act. *Id*. at 15. Frankfort further alleges that Mr. Rogers's real concern was not about sexual harassment, but rather a "perceived preference among colleagues," which is not the type of action that triggers Title VII. *Id*. at 14-15. In essence, Frankfort's argument is that Mr. Rogers's deposition testimony fails to support any inference that Mr. Rogers reasonably believed he was reporting a Title VII violation.

Despite Frankfort's well-reasoned arguments, the Court finds that a reasonable inference can be drawn that would support Mr. Rogers's position, which is that he did reasonably believe he was reporting unlawful activity under Title VII. First, Mr. Rogers testified that he believed Mr. Bradley and Ms. Hall were engaging in an inappropriate relationship. [R. 48-1.] As Mr. Rogers correctly points out in his response to Frankfort's motion for summary judgment, it is irrelevant whether Ms. Hall openly welcomed Mr. Bradley's actions. [R. 48 at 5.] What matters is what Mr. Rogers believed the situation to be. And it appears that Mr. Rogers's belief was based on more than just rumors from other employees—it was also based on personal conversations with Ms. Hall, in which she told Mr. Rogers that Mr. Bradley had been calling her late at night on personal work trips. *Id*.

Additionally, the primary consideration is not whether Mr. Bradley's and Ms. Hall's conduct was actually unlawful, but whether Mr. Rogers held an objectively reasonable and good faith belief to that effect. *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 512 (6th Cir. 2016) (citing *Booker v. Brown & Williamson Tobacco Co*., 879 F.2d 1304, 1312-13 (6th Cir. 1989) ("[a] person opposing an apparently discriminatory practice does not bear the entire risk that it is in fact lawful; he or she must only have a good faith belief that the practice is unlawful.")). An issue cannot be decided as a matter of law where reasonable minds could disagree about whether an employee's belief was objectively reasonable. *See id.* (citing *Rhinehimer v. U.S. Bancorp*

*Invs., Inc.*, 787 F.3d 797, 811 (6th Cir. 2015)).  Thus, Frankfort's contentions that Mr. Bradley was concerned only with preferential treatment, rather than sexual harassment, misses the mark. Given Mr. Rogers's letter to the Mayor, along with his testimony, a reasonable inference can be drawn that Mr. Rogers believed he was reporting unlawful conduct that needed to be brought to the City's attention.

The Court reiterates that just because an inference can be reasonably drawn in Mr. Rogers's favor does not mean that the Court ultimately takes a position on whether Mr. Rogers engaged in protected activity.  Rather, what it means is that Mr. Rogers has produced enough evidence at this juncture to proceed forward and let a jury make the ultimate factual determination as to whether Mr. Rogers did hold a reasonable, good-faith, belief that he was reporting unlawful conduct under Title VII.  *See Braun*, 828 F.3d at 512 ("[T]he issue of objective reasonableness should be decided as a matter of law only when no reasonable person could have believed that the facts [known to the employee] amounted to a violation or otherwise justified the employee's belief that illegal conduct was occurring[]") (quoting *Rhinehimer*, 787 F.3d at 811).  Here, reasonable minds could disagree.  Thus, because a genuine dispute of material fact exists as to the first element of Mr. Rogers's prima facie retaliation claim, the Court will next analyze Frankfort's argument as to the fourth element.

## C

The next issue that Frankfort raises in its motion concerns Mr. Rogers's ability to show a causal connection between the failure-to-hire and his letter to the Mayor.  The causal connection factor requires a plaintiff to "proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action."  *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (internal citations and quotation marks omitted).  In other words, "a

plaintiff must show that the employee's protected activity was a 'but for' cause of the employer's adverse action against her, meaning the adverse action would not have occurred absent the employer's desire to retaliate." *George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020) (internal citation omitted). This burden is not onerous at the prima facie stage. *Id*. at 460. The plaintiff can meet this burden by proffering "evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights." *Id*. (internal citation omitted).

"In order to establish a causal connection between the protected conduct and the adverse action, plaintiff must produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that the [adverse action] would not have occurred but for his engagement in protected activity." *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010). A causal link can be shown through direct or circumstantial evidence. *Id*. An inference of causation may be shown where an adverse employment action occurs very close in time after an employer learns of a protected activity. *Id*. "But even if enough time passes between the protected activity and the adverse action so as to preclude a finding of causation based on the close timing alone, an employee can still prevail if she 'couple[s] temporal proximity with other evidence of retaliatory conduct to establish causality.'" *George*, 966 F.3d at 460 (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).

To show a causal connection, Mr. Rogers first points to the temporal proximity between his letter to the Mayor and the ultimate decision to hire someone else for the transit driver position. [R. 48 at 10-11.] According to Mr. Rogers, he wrote his letter in November 2018 and was then interviewed for the transit driver position. *Id.* at 11. Then, one month later in December 2018, the position was withdrawn. *Id*. The following February, the position was

reopened and someone else with less qualifications was ultimately hired. *Id.* Unfortunately for Mr. Rogers, his temporal proximity argument fails to support his prima facie case. Although Mr. Rogers's narrative is, at face-value, compelling, he fails to cite any evidence in the record that would support his temporal proximity argument. [*See* R. 48 at 10-11.] Moreover, so as to provide Mr. Rogers the benefit of the doubt, the Court has reviewed the deposition testimony and affidavits that accompany Mr. Rogers's response to Frankfort's motion. None of the proffered evidence would tend to support Mr. Rogers's temporal proximity narrative. At the summary judgment stage, the non-moving party cannot merely rely on its assertions as to the truth. Rather, Mr. Rogers must present significant probative evidence that would lend support to his version of the facts. *See Hall Holding*, 285 F.3d at 424. Because Mr. Rogers has not met his affirmative duty to direct the Court's attention to those specific portions of the record upon which he seeks to rely, the Court cannot provide any reasonable inference in Mr. Rogers's favor that there is a temporal proximity between his protected action and the failure-to-hire.

Fortunately for Mr. Rogers, his direct evidence saves the day. Specifically, Mr. Rogers cites the deposition testimony of Vicki Jones, an employee of Frankfort.[2] Ms. Jones testified that she had conversations with Jennifer Hall about Mr. Rogers's application to become the seasonal transit driver and that "[Ms. Hall] didn't see herself being able to hire [Mr. Rogers] from the rumors that were going around the City." [R. 48-3 at 1.] According to Ms. Jones, those rumors related to an affair between Ms. Hall and Mr. Bradley. *Id.* Thus, "[Ms. Hall] just couldn't see herself hiring [Mr. Rogers] with the allegations that he had stated." *Id.* at 2. Such direct evidence, if accepted by a jury, could show that there was a causal connection between the

---

[2] Neither Mr. Rogers's briefing, nor his attached exhibits, necessarily inform the Court of what Ms. Jones's role with the City of Frankfort is. Despite this shortcoming, the inference drawn in Mr. Rogers's favor, from Ms. Jones's deposition, suggests that Ms. Jones is indeed an employee of the City. [*See* 48-3.]

protected activity (Mr. Rogers's letter) and the adverse employment action (the failure-to-hire).

Because Mr. Rogers can sufficiently state a prima facie claim of retaliation, the burden shifts to Frankfort to articulate a legitimate non-discriminatory reason for not hiring Mr. Rogers. *See McDonnell Douglas Corp.*, 411 U.S. at 802. According to Frankfort, which relies on Ms. Hall's deposition testimony and affidavit, the reason for not hiring Mr. Rogers was simple: no one was hired in Fall 2018 for the seasonal transit driver position. [R. 47-1 at 17-18.] Ms. Hall testified that in Fall 2018, shortly after becoming Transit Superintendent, she believed the seasonal transit driver position needed to be filled. [R. 47-4 at 5-6.] Subsequently, she reviewed the staffing needs and determined that a seasonal driver would not be required until April 2019. *Id.* at 7. Despite collecting applications and conducting interviews with candidates, Ms. Hall and her superior ultimately made the decision not to hire anyone as a seasonal transit driver. *Id.*; [R. 47-5.] The hiring process then began all over again in February 2019. [*See* R. 49-3.] Thus, argues Frankfort, its legitimate non-retaliatory reason for not hiring Mr. Rogers is rooted in the City's "fiscally responsible decision" not to hire anyone at all. [R. 18.] Because a reasonable jury could find this reason to be legitimate and non-retaliatory, the burden shifts back to Mr. Rogers to show that the City's reason was pretextual.

"Pretext is established by a direct showing that a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible." *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 342-343 (6th Cir. 1997) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). "A plaintiff can demonstrate pretext by showing that the employer's proffered reason for the adverse action (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Braun*, 828 F.3d at 513 (internal citations

omitted).

Frankfort argues that Mr. Rogers has not presented any evidence suggesting that Frankfort's decision not to hire anyone at all during Fall 2018 was pretextual. [R. 47-1 at 18; R. 49 at 6-8.] Mr. Rogers counters that the decision not to hire anyone at all is "nonsense." [R. 48 at 10.] Mr. Rogers contends that the hiring process was merely delayed, and was not effectively terminated. *Id.* Regardless, argues Mr. Rogers, any delay or termination would not have had any practical effect on the City's decision not to hire Mr. Rogers. *Id.* Rather, the real motivation for failing to hire Mr. Rogers was because of his letter to the Mayor.

In support of his argument on the issue of pretext, Mr. Rogers draws the Court's attention to Ms. Jones's deposition testimony. Ms. Jones, as discussed above, testified that she had a conversation with Ms. Hall about the seasonal transit position, and that "[Ms. Hall] just couldn't see herself hiring [Mr. Rogers] with the allegations that he had stated." [R. 48-3 at 2.] This particular evidence could satisfy an inference that the City's reason for its failure to hire Mr. Rogers was indeed pretextual. Thus, there is a genuine dispute of material fact on the causal element of Mr. Rogers's retaliation claim.

### III

Again, at the summary judgment stage, the Court makes no determination as to the credibility of the witnesses or the likelihood that Mr. Rogers's claim will ultimately succeed. Moreover, the Court does not weigh the evidence nor attempt to determine the truth of the matter. So long as a reasonable juror could credit Mr. Rogers's evidence, summary judgment is unwarranted. *George*, 966 F.3d at 462. The City of Frankfort believes that Mr. Rogers was not engaging in protected activity under Title VII, and that it has a legitimate reason for not hiring Mr. Rogers. But Mr. Rogers has presented evidence that suggests (a) he may actually be

12

protected, and (b) casts doubt on the City's asserted reason for not hiring him.  Thus, genuine issues of material fact exist for a jury to decide.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant City of Frankfort's Motion for Summary Judgment [**R. 47**] is **DENIED**.


This the 27th day of March 2024.


Gregory F. Van Tatenhove
United States District Judge